Marrero-Mendez et al. v. Guillermo Calixto-Rodriguez, etc. et al. Good morning. May it please the court, Margarita Mercado Echegaray on behalf of Defendant Apellis. I would like to reserve two minutes for rebuttal, please. You may. Before addressing the merits, I would like to clarify the scope of the claims presented in the complaint, of the issues presented in this interlocutory appeal, and of the relevant allegations that are relevant to the limited issue that is presented in this case. The complaint has two main claims regarding alleged constitutional violations under federal law. One claim is under the Establishment Clause, and the second claim is a retaliation claim. On appeal, the sole issue before review is the Establishment Law claim on the basis of our defense of qualified immunity. That means that any and all allegations that pervade a plaintiff's brief regarding alleged punishments or adverse employment actions that were taken after plaintiffs filed an informal grievance and then a formal grievance regarding alleged unconstitutional prayer practices. Those allegations pertain exclusively to the retaliation claim and not to the Establishment Clause claim. In their brief, plaintiffs conflate the First Amendment issue with the retaliation, and they seem to equate retaliation with a pertinent analysis on the Establishment Clause. But I should draw the court's attention to the fact that in the first count of the complaint dealing with the Establishment Clause, you won't find any reference to alleged punishments that the plaintiff suffered with regards to his First Amendment rights. The first count of the complaint limits itself to alleged unlawful endorsement of religious practices, alleged coercion regarding religious practices. But you won't find any mention of what you do find in the brief that intermingles coercion under the Establishment Clause with retaliation. Counsel, let me read to you the way in which the district court phrased what it thought was the critical question. I'd like you to tell me if you think that the district court phrased the question improperly. This goes to the clearly established law proposition, which I think you're focusing on. The district court said that the state of the law in March of 2012 would have enabled a reasonable officer to conclude that ordering a subordinate to observe a religious prayer given during an official meeting without giving that subordinate authority to opt out would violate the Constitution. That's how the district court read the allegations in the complaint. That's what the district court concluded that the appellee here was alleging. Do you take issue with the way in which the district court read the complaint? Yes. We do take issue with the legal conclusion that the allegation that he was present during the prayer and that he at most heard the prayer but did not participate, that equates legally with coercion under the Establishment Clause. We do take issue with the framing of the controversy and with the conclusion that there was coercion. But it's telling that in framing that issue, the court did not reference the other allegations in the complaint dealing with punishment or retaliation, which is what plaintiffs do on appeal. And that's why I wanted to clarify the scope of the issue. That seems like a very strange way to read the complaint. I mean, he does allege that he experienced repercussions, no longer could holster a gun. He had a diminution of his responsibilities. He was essentially marginalized in his work as a police officer. And he explicitly links all of that to this event when he announced that he would not, he was very uncomfortable as an atheist being required to participate in a prayer ceremony. And you're suggesting that those allegations had nothing to do with his Establishment Clause claim? It is my contention that reading the complaint, the specific count on the Establishment Clause, you won't find allegations as a matter of law regarding those alleged repercussions, attaching them to the Establishment Clause claim. Particularly, I view those allegations, the factual allegations of the repercussions, the retaliatory conduct, to the fact that he lodged a complaint on the night of the pertinent event. He complained about prayers informally, orally to his supervisors. And after the complaint, he alleges that he had suffered embarrassment and that after he filed a formal complaint, then other actions were taken. But that's a retaliation. He alleges that he experienced embarrassment and humiliation at the very time that the event occurred. I do agree. I do agree that that's an allegation in the complaint. But then my argument would be that as a matter of clearly established law that does not equate with the type of coercion that could lead to the conclusion that he suffered an Establishment Clause violation clearly is stated in this case. The case law, and it is our contention that it isn't clearly established, that a reasonable officer in this circumstance would think that it was clearly established that the prayer itself or the actions that the officers took in allowing plaintiffs to separate himself from the formation would clearly violate plaintiffs' rights. It wasn't just separation. He stepped out of line and was ordered to stop, according to him, within hearing distance of the prayer itself. And then subsequent to the prayer being concluded, the officer singled him out to say he doesn't believe like us. So it's a lot more, and it's in his complaint, so it's a lot more than you're making it out to be. And you're saying under those circumstances, it wasn't clearly established that an officer who's heading a paramilitary organization, knowing that his police officers are obligated to obey his commands, that that's not coercion? It is our contention that it is not clearly established under the applicable case law that that would amount to coercion. I do argue with your honors that there is the allegations in the complaint state that he was exposed to religious prayer, that he moved away from the formation and his back was facing the formation, but that he was exposed to the prayer and that it did happen in the context of his employment in an on-field operation prior to the officers going out to the line of duty. But the plaintiffs have not marked. Well, that's an allegation that he felt that was offensive to him, but a reasonable officer could also conclude that the statement made by Calixto was explanatory as to why this person was separated from the formation and was not partaking in the prayer. But I respectfully submit that the case law is... We look at the complaint in a way most favorable to the pleader. The most favorable inference is that the plaintiff felt embarrassed and that he didn't feel comfortable with the reaction that the officer had. But as a matter of law, there is no basis to hold that it was clearly established at the time under the case law, under the Establishment Clause, that this prayer and that the remedy that the officers had in place in that moment which was to separate him was not enough to meet the constitutional burden. The plaintiffs cite several quid pro quo cases in the Establishment Clause, but none of those cases form the basis of persuasive authority that could be imputed in this case. But his allegation is that he wasn't allowed to separate, that he was forced to stop when he was trying to separate and stand there and listen to the prayer. That's his allegation. And then he was mocked. Well, the allegation in paragraph 26 states that he did move away from the formation, so he did not partake in the prayer. And to me, that's an operative fact that's conclusive in this case. I do agree with Your Honor that there's a reasonable inference from this. How was his lack of participating in the prayer any different from all of the other officers who were standing there simply listening? They were partaking in the formation where the prayer was taking place. He was separated and there's... In hearing distance. I can agree that an inference from the complaint is that he was exposed to it, that he heard it. But again, since we are in the qualified immunity context, I should draw this Court's attention to the fact that we don't have any binding precedent or persuasive authority holding that this type of prayer is unconstitutional. Are you suggesting that this prayer could somehow be viewed as a ceremonial prayer that might be used at the opening of a legislative session or a town council meeting such as in the town of Greece? I mean, is that what you're suggesting, that an officer could understand that this is akin to a ceremonial prayer such as used in the town of Greece case? Is that what you're arguing? That would be the most analogous case law that we can muster that shows that prayers in general in the public context and in official proceedings are not unconstitutional as a matter of law. The context, this is a fact-intensive inquiry, and in the Galloway case the Court examined the context, the person exposed to the prayer, the type of prayer, and the historical context in which it ensues. And the analysis in the Galloway case shows... What is comparable about this gathering of police officers prior to what's referred to as an intervention of some kind? I'm not sure what that is, but how is that gathering of police officers at all comparable to a legislative body such as the Nebraska legislature in the Marsh case or the town council in the town of Greece case? How are they at all comparable? Obviously we don't have the historical background that those cases had dealing with that particular prayer practice in the legislators, but this Court should also know that it is a common practice for them prior to... This was a drug intervention that they were partaking on at night. They were preparing in a parking lot. So this is a voluntary, even spontaneous gathering for them, gathering themselves in a team before going out to a dangerous situation. What was voluntary about it for the officers? It ensues voluntarily among the officers. And in this case, when he lodged the objection, he was allowed to leave the formation. I do agree that he has allegations that it was maybe not... Were they in formation? They were in formation. How could that be called voluntary? Well, because I draw that as a voluntary inference because he was allowed to move away from the formation and he was not required in the allegations in the complaint to pray with them or to partake. And it was clear to the formation that this person had lodged an objection and he was not participating in the prayer. I do agree that this circumstance is prior to an intervention where there were supervisors partaking in the prayer. But it is our contention on their qualified immunity. How were they called to that formation? I'm sorry? Does the record show how they were called? We are in the pleading stage, so in the complaint there's no... I don't remember a particular allegation as to how it came about, but they were about to go... They were in the parking lot. They were about to be dispersed into their different assignments and there was a formation between them together and that's when there was an invitation for a prayer and he was allowed to move away from the formation. Thank you, Carla. Thank you. Ms. Weaver, good morning still. Good morning. My name is Heather Weaver. I'm appearing today on behalf of Mr. Alvin Morero-Mendez. Under the Establishment Clause, it has long been clear that the government may not punish someone because he refuses to pray or profess a religious belief. The argument that the effective demotion and disarming of Mr. Morero-Mendez are not relevant to the Establishment Clause claim here finds no basis in the law or the complaint. But even if they weren't relevant, it's clear that the conduct by the defendants still violated the Establishment Clause and that Mr. Morero-Mendez was forced to pray against his will as part of his employment with the Puerto Rico Police Department. What is the evidence... Maybe it's the wrong question, but... This certainly should be in the record. The temporal relationship between the actions that were taken after the formation and the prayer. On March 9th, the then-commander, Defendant Calixto Rodriguez summoned the police officers, including Mr. Morero, to a parking lot to discuss their plan for the evening and to issue orders regarding that plan for the evening. Was that done orally? Excuse me? Was that done orally? That's not reflected in the complaint, and I'm unsure of the answer to that. At that meeting, the commander solicited a prayer while all the officers were standing in formation, and there's no discussion as to the exact timing, but the meeting began around 7.30 p.m. Counsel, just looking at Paragraph 23, it says that on March 9th, 2012, around 7.30, then Carolina Area Commander Defendant Guillermo Calixto Rodriguez summoned over 40 police officers of the Carolina region to discuss an intervention. I mean, that sure sounds like he's not issuing a writing. That does sound that he's orally commanding them to gather for the purpose of this prayer. That's right. So why are you reluctant to say that? Oh, I'm not reluctant to say that at all. I just don't know how he summoned them. It could have been orally or by some – I don't know how the command system works in the Puerto Rico Police Department, but he definitely summoned them and commanded them to this parking lot for the purpose of briefing them about their evening's activities and also for the purpose of conducting this prayer. And there was no choice on that. Did he say that in the summons? Excuse me? Did he say that he was summoning them to pray, or was that just something that arose when they got there? He summoned them to the parking lot, and it's the practice and policy of the police department to include prayers in various events, including these briefings that occur before the officers go out onto patrol. There's a long history of case law that makes clear that the government may not punish someone for refusing to pray or profess a religious belief, and that case law starts in 1947 in Everson v. Board of Education. It's a seminal establishment clause case where the court expressly said that if the establishment clause means anything, it means that the government may not punish someone for professing religious beliefs or disbeliefs or refusing to do so. The court has affirmed that again and again, and so have the sister circuits. Never has the court suggested that the punishment is only relevant to a separate retaliation claim. In Tarkovsky v. Watkins in 1961, the Supreme Court, affirming the language of Everson, said that the government could not deny commission to a notary public as penalty for his refusal to affirm a belief in God. The violation there was not only the fact that they were imposing this oath, this religious oath as a condition for public employment, but it was that they then denied him the oath, the punishment. Excuse me, they denied him the commission. It was the punishment that was additionally part of the establishment clause violation. In this case, there are a number of punishments that the defendants inflicted on Mr. Marrero Mendez as a result of his refusal to pray. First, as your honors noted, they required him to remain nearby for the prayer, even though he objected to it. Then they mocked him because of his different religious beliefs. Then subsequently, on that same day, they disarmed him because of his refusal to pray. That was the same day? That was the same day. It was only minutes after the, you know, within an hour or two after the meeting concluded, and they were off on their way to do their patrolling. But even in his own complaint, Counselor, he describes that he was in a highly emotional state. One could read the complaint to mean that there was concern because he was so emotional that he was not in a condition to have a firearm on him. If the complaint is taken with the reasonable evidence drawn in favor of the plaintiff, the complaint should be read to suggest that the reason that he was disarmed was because of the fact that he, yes, he was upset, but it was because of the fact that he did not want to participate in the prayer. Subsequent to that, then the defendants effectively demoted him from his normal patrolling duties. He was a patrol officer. The complaint says that he wanted to be reassigned the way he puts it. He preferred to be assigned to work performing his usual duties at the airport station. That suggests that he requested that his responsibilities be altered. He did request that his responsibilities be altered. He did request to be reassigned to perform his usual duties at the airport station for that one night. He did not request to be permanently reassigned, and he did not request to be effectively demoted to washing cars and delivering messages. Before this incident occurred, he was a patrol officer for 13 years, and he had many important responsibilities as a patrol officer. He patrolled and attended to complaints. He conducted arrests. He dealt with the public, and he undertook other crime prevention activities. Can I interrupt you a second? At any point did he request that he be rearmed again? Yes, he did, and he filed an administrative request objecting to the disarming, and he was not rearmed in response to that request. And that was sometime after he was emotionally disturbed? The abduction he filed to what happened and the disarming occurred within days of the event. Was he ever ordered to undergo any type of psychological evaluation? Well, that's not present in the complaint at this time, and so it wouldn't be relevant to the court's decision here, but it's my understanding that, yes, there was some order relating to that. Again, the court here has to accept all of the allegations as true and draw all reasonable inferences in Mr. Marrero's favor, and if that happens, it's clear that the defendant's conduct here violated well-established law, providing that the government cannot punish someone for refusing to pray. In addition to Everson, in addition to Tricasso, the Supreme Court more recently ruled in 1992 in Lee v. Wiseman that you could not punish students for their refusal to participate in prayer, and there the punishment was even milder than it would have been here. It was that they would have had to either miss their graduation ceremony or they would have had to be ostracized potentially by their fellow students as a result of coming out as nonbelievers. In the sister circuits, this principle has been applied in the police employment context. In Venters v. City of Delphi, the Seventh Circuit held that there, the police department, the police chief, who had allegedly fired a radio dispatcher for her refusal to adopt and live by his religious beliefs, could be found to have engaged in religious coercion. The court said that it was very possible that if the jury found that she was fired because of her refusal to adopt his religious beliefs, it would be religious coercion. The court even went further in the Seventh Circuit and said that a jury could find that by requiring her to submit to his religious dialogues, the police chief had engaged in coercion prescribed by the establishment clause, even if he ultimately terminated her for lawful reasons. Counsel, doesn't the appellant have a point in the sense that the, I mean, the Supreme Court itself has acknowledged that its establishment clause jurisprudence is a bit muddled in the sense that they have three different tests that are used to assess an establishment clause claim. And if the Supreme Court has acknowledged the somewhat confused state of its law, why isn't there a fair argument that a reasonable officer might not understand that what happened here violates the establishment clause? There has never been any confusion about this one principle, the fact that the government cannot punish someone for refusing to pray or profess a religious belief. In fact, in town of Greece, which Your Honor mentioned earlier, the court said there that even though it upheld legislative prayers, which are a different context, as you recognize, than a police department, even there the court said that if the town board had punished someone for refusing to pray, it would be a violation of the establishment clause. The court said, quote, the analysis would be different if town board members directed the public to participate in the prayers, singled out dissidents for opprobrium, or indicated that their decisions might be influenced by a person's acquiescence in the prayer opportunity. Defendants violated all three conditions here. So it's very clear that regardless of whatever confusion might exist in other areas of the establishment clause, and defendants' brief focus is largely on religious displays, this is not a religious display case, whatever confusion there may exist, there's never been confusion about this basic principle, and that is that the government cannot punish someone for refusing to pray or refusing to profess religious beliefs. If there are no other questions, I submit that the defendants had fair warning in 2012 that it would violate the establishment clause to subject a subordinate to official prayers during mandatory briefings, require that subordinate to remain present for these prayers even after he objected, mock and censure him over his religious beliefs, and then disarm and effectively demote him because he would not submit to the religious exercise. This violation was so obvious under the law that defendants are not entitled to a qualified immunity, and we ask that you affirm the district court's ruling. It's not relevant to our deliberations, but this is one of those cases that's baffling to me why it hasn't been settled. You'll have to ask, I think you'll have to ask the defendants that question. I assume they heard the question. I assume they heard the question. Certainly it seems that given the clear law and the violation here, that would be a wise course of action for the defendants. Thank you. I would begin by clarifying a question that was posed earlier about whether the plaintiff was submitted to psychological evaluations. In the answer to the complaint it is stated that he was submitted to evaluations and that at the time the complaint was answered he was not rearmed because he didn't meet the agency's standards for him to carry his weapon. I would like also to draw the district court's attention to the fact that the fact that he was disarmed Excuse me before we go any further. We're talking about a 13-year-old veteran who has been carrying a weapon for 13 years and now all of a sudden is not qualified to carry a weapon? As the complaint itself alleges at the date of the events he was in an emotional state and the officers reasonably concluded that at that night he couldn't carry his weapon. Administrative procedures were in place to determine when and under what conditions he could regain his weapon and at the time the complaint was answered he was deemed not fit due to other circumstances and to his emotional state months after the events to carry the weapon. Is this a result of the examination that was given to him? Yes, there were administrative proceedings once an officer is disarmed and there's administrative proceedings to determine when he would regain the weapon. What was the date of his examination? I believe it was months after. I could supplement the record but in the answer to the complaint the facts are outlined as to why at the time of the complaint that was answered in May 2013 he was still not carrying his weapon. He's still not? I don't have the information as of today if he has been returned his weapon. Counsel, just as a pleading matter, you insist that these allegations about all the things that happened to him after this incident we've been talking about really has to do with his retaliation claim and not his established claim but in a very traditional manner you look at the way in which the establishment claim is pleaded. It says plaintiff incorporates the preceding paragraphs as they're fully set forth here at length and so in that establishment clause claim they incorporate all of the allegations relating to the way in which he was punished as he sees it for asserting his displeasure with being required to participate in this pursuit. I don't know how you can say that those allegations only relate to the retaliation claim and not the establishment clause claim. If you look at the discussion of count one, they frame the issue as to the unlawful endorsement of religion, coercion, but the only place in the counts of the complaint, the counts, that they reference the alleged actions that took place after the event, after his complaints, it's in the retaliation claim that they claim that he was harassed, that he was demoted, so they attach those allegations with the retaliation claim and it is a retaliation claim. He claims that he lodged a complaint regarding unlawful practices in the police and as a consequence of the police complaint or the protected action he was demoted or was taken, he hasn't received back his normal duties as he claims and that is a traditional retaliation claim. I think my time is up. Thank you. Well, since we interrupted, is there anything else you want to say in a couple of minutes? Yes, I would like to draw this Court's attention to the fact that even if we agree that the Constitution precludes the government from coercing people into endorsing religious activity, that is not the precise legal question that this Court needs to address in order to determine that defendants are, in order to address the qualified immunity context. As Judge Chalipas pointed out, the establishment clause cases, even the prayer cases, the student prayer cases, and the religious symbol cases all show how the Court employs a case-by-case analysis. In the Galloway case, the Court stated that the coercion analysis in a prayer case revolves around the nature of the prayer and the nature of the audience subjected to the prayer. Counsel, your opponent pointed out in the town of Greece case, although they approved that prayer, they pointed out that if anyone attending that prayer had to face the consequences for not being willing to participate in that prayer, that would violate the establishment clause. So there are sort of core principles that define the establishment clause, and I think they're saying that what happened here at least violates those core principles, whatever other uncertainty there may be about the establishment clause. But in this case, even reading the complaint, Paragraph 26, in the light most favorable to plaintiff, it cannot be concluded that he was precluded from working or that as a condition to work that night, he had to participate in the prayer. He was allowed to voice his opposition and he was allowed to move away from the formation. He was not coerced or forced, as the district court found, to participate in prayer. So that would distinguish it, that even if you deem there are non-delegations of punishment, there is no case clearly establishing that he was subjected to some cognizant punishment that night that would preclude him from his duties that night. So those cases are distinguishable because he was allowed to object, even though he remained in the vicinity, but this wasn't a quid pro quo issue that he was required to pray in order to go about doing his duties. Thank you.